SERVED:  October 23, 2013

NTSB Order No. EA-5682

UNITED STATES OF AMERICA
**NATIONAL TRANSPORTATION SAFETY BOARD**
WASHINGTON, D.C.

Adopted by the NATIONAL TRANSPORTATION SAFETY BOARD
at its office in Washington, D.C.
on the 23rd day of October, 2013

_____  )
                                   )
Petition of                        )
                                   )
ROBERT JOHN REPETTO                )
                                   )
for review of the denial by        )          Docket SM-5275
the Administrator of the           )
Federal Aviation Administration    )
of the issuance of an airman       )
medical certificate.               )
                                   )
_____  )

**OPINION AND ORDER**

1. *Background*

Petitioner appeals the order of Chief Administrative Law Judge Alfonso J. Montaño,

issued January 11, 2013.[1]  In the order, the law judge granted the Administrator's motion for

summary judgment, concluding petitioner failed to provide the Administrator with information

the Administrator reasonably requested under 14 C.F.R. § 67.413(a).[2]  We deny petitioner's

---

[1] A copy of the law judge's order is attached.

[2] Section 67.413(a), titled "Medical records," states:

appeal.

    A.  *Facts*

        1.  *Federal Air Surgeon's Denial*

    Petitioner, as a Federal Aviation Administration (FAA) employed air traffic control specialist who holds a private pilot certificate, applied for an airman medical certificate on February 8, 2011.[3]  The designated aviation medical examiner who accepted petitioner's application referred it to the Administrator for further evaluation and consideration, ostensibly because petitioner answered affirmatively questions concerning alcohol abuse or dependence and regarding arrest(s) for driving while impaired by or while under the influence of an alcohol or drug (hereinafter, "DUI").  In the narrative section of the application, petitioner listed two events concerning his DUI history: "12/04 previously reported" and "arrest 7/10, not guilty 8/10,

---

(..continued)

       (a) Whenever the Administrator finds that additional medical information or history is necessary to determine whether you meet the medical standards required to hold a medical certificate, you must:

       (1) Furnish that information to the FAA; or

       (2) Authorize any clinic, hospital, physician, or other person to release to the FAA all available information or records concerning that history.

Paragraph (b) provides the enforcement mechanism for lack of compliance with the above requirements, as follows:

       (b) If you fail to provide the requested medical information or history or to authorize its release, the FAA may suspend, modify, or revoke your medical certificate or, in the case of an applicant, deny the application for a medical certificate.

[3] The parties have identified petitioner's application as one for an airman medical certificate. However, as the Administrator's attorney notes in the Administrator's motion for summary judgment and in the brief in reply to petitioner's appeal, petitioner was not clear on his application as to whether he was applying for an *airman* medical certificate or an *air traffic controller* medical certificate, or both, as the FAA uses Form 8500-8 for both types of certificates.  Instead of checking what class medical certificate for which he was applying, petitioner wrote "ATC."  In addition, the aviation medical examiner checked a box stating "FAA ATC deferred—No certificate issued."  Mot. for Summary J. at Attach. B.

reported to AEA-300."[4]

As a result of petitioner's July 2010 arrest, the Administrator requested petitioner submit various documents from health care providers, related to both his arrest and his employment status as an air traffic controller.  Currently, the matter related to petitioner's employment is pending in an arbitration process, and is unrelated to the case at issue, involving petitioner's airman medical certificate.

On June 30, 2011, the FAA Regional Flight Surgeon in New York issued a preliminary denial letter stating petitioner was ineligible for a medical certificate under 14 C.F.R. § 67.107(a)(4).[5]  On July 12, 2011, petitioner replied in a letter, seeking reconsideration of the decision and describing several medical reports he submitted to the Federal Air Surgeon in response to his employment matter as an air traffic controller.  Petitioner's letter stated he was willing to provide "additional documentation" or "resubmit all of the above reports to your attention."[6]  Before the Federal Air Surgeon issued a determination regarding petitioner's request for reconsideration, petitioner sent two letters requesting the Federal Air Surgeon issue an official denial of petitioner's application, to enable petitioner to submit an appeal promptly to the Board.  On November 8, 2011, Dr. James DeVoll, Manager of the FAA Medical Appeals Branch, sent petitioner a letter stating the Federal Air Surgeon needed additional medical information in order to make a determination concerning petitioner's eligibility to hold a medical certificate.  In particular, Dr. DeVoll's letter requested petitioner send "[r]ecords of all

---

[4] Mot. for Summary J. at Attach. A.

[5] Section 67.107(a)(4) provides "[m]ental standards for a first-class airman medical certificate are (a) No established medical history or clinical diagnosis of … (4) Substance dependence, except where there is established clinical evidence, satisfactory to the Federal Air Surgeon, of recovery."

[6] Mot. for Summary J. at Attach. D.

evaluations, treatments (whether inpatient or outpatient), rehabilitation, recovery, aftercare, or any other services provided by Princeton House Behavioral Health, to include but not limited to years 2004 through the present."[7]  The letter also requested petitioner provide a signed and dated release to allow the FAA to discuss petitioner's case with the staff at Princeton House Behavioral Health.

In response to Dr. DeVoll's request, petitioner sent a letter on November 17, 2011, stating he was not seeking a special issuance certificate, and that he believed he was eligible for an unrestricted medical certificate.  Petitioner attached a 2006 letter from Princeton House to his November 17, 2011 letter, and stated he had already provided the FAA with all necessary information.  The December 19, 2006 Princeton House letter, however, only states petitioner was in the program at Princeton House from October 20, 2004 to December 2, 2004 "and is not currently under our care, nor is he receiving any services" from Princeton House.[8]  Petitioner's November 17, 2011 letter also stated the FAA's request for information was "not reasonable and certainly not relevant as is required of a 67.413 request."[9]

Petitioner again wrote the FAA on December 28, 2011, and asserted the FAA's request for additional information was "pretext to avoid a full hearing with the NTSB."[10]  In response, Dr. DeVoll sent a letter dated February 16, 2012 to petitioner, again requesting additional information and explaining the FAA's opinion that additional information was necessary.  In particular, Dr. DeVoll's February 16, 2012 letter states:

To date, you have not provided the information requested.  The information

---

[7] Mot. for Summary J. at Attach. F.

[8] Mot. for Summary J. at Attach. G.

[9] Id.

[10] Mot. for Summary J. at Attach. I.

currently in your medical file reveals that you were arrested for driving while intoxicated on October 8, 2004, and a toxicology analysis of October 22, 2004 reported positive for alcohol at 0.306 Wt/Vol%.  The information also indicates that in addition to seeking treatment at Princeton House, you were required to complete an Intoxicated Driver Program, your driving privileges were suspended for 9 months, and for a period you were required to use an interlock device.  The letter from Vija Mangulis of November 29, 2004 states that you underwent 6 weeks of intensive outpatient therapy to, in part, "establish and maintain sobriety, stabilize on psychotropic medication as needed, utilize the 12-step approach to recovery," with plans for follow-up individual therapy and attendance at AA meetings.  In your letter of November 29, 2006, you stated you had "completely quit drinking" and suggest a plan of continued sobriety.  However, on July 13, 2010 you had an alcohol-related event resulting in arrest, indicating that you were not maintaining sobriety … To clarify, the information we requested will be used to determine your qualifications for an unrestricted medical certificate, or eligibility for special issuance of a medical certificate.[11]

Dr. DeVoll also asserted the request for more information was reasonable and relevant to clarifying petitioner's diagnosis and qualifications under 14 C.F.R. part 67.  Further, Dr. DeVoll reiterated the FAA's request for a signed and dated release authorizing the FAA Office of Aerospace Medicine staff and the staff at Princeton House to discuss "all aspects of [petitioner's] case."[12]

In response to the second request from Dr. DeVoll, petitioner sent a letter refusing to provide the requested information.  Petitioner's February 22, 2012 letter states he believed the requested information was not reasonable or relevant, based on the fact petitioner was not found guilty of the 2010 alcohol-related incident due to a problem with the breathalyzer machine.  On March 23, 2012, the Federal Air Surgeon sent petitioner a final denial letter, denying petitioner's application under 49 C.F.R. § 67.413.

2.  *Procedural History*

Following petitioner's receipt of the Federal Air Surgeon's denial, petitioner appealed.

---

[11] Mot. for Summary J. at Attach. J.

[12] Id. at 2.

The Chief Administrative Law Judge assigned himself to oversee the case, and ordered the

commencement of discovery.  The parties engaged in several discovery disputes; specifically, the

Administrator denied some of petitioner's requests for certain information, on the basis that

petitioner sought information concerning whether he had a substance abuse or dependence

problem.  The Administrator also denied petitioner's requests for ATC medical records on the

basis that such records were irrelevant to the case at issue.  The Administrator contends this case

does not involve whether petitioner is ineligible for a medical certificate under 14 C.F.R.

§ 67.107, but instead rests on whether petitioner satisfactorily responded to the Administrator's

request for information under 14 C.F.R. § 67.413.  Similarly, during discovery, petitioner

continued to deny the Administrator's requests for Princeton House medical records and a signed

release form, on the basis he already provided the records to the Administrator, and the

Administrator's request for additional records was unreasonable.

    The Administrator's attorney filed a motion for summary judgment, contending no

factual issues existed, because petitioner indisputably had not provided the records or signed

release the Administrator requested.  Petitioner filed a motion to compel discovery, and a motion

to extend the amount of time for his response to the Administrator's motion for summary

judgment, for the purpose of delaying his response deadline until "after full discovery."  In

particular, petitioner asserted he needed information via responses to interrogatories, as well as

documents, from the Administrator.  The Administrator declined to provide some information on

the basis it was irrelevant; in this regard, many of the paragraphs in petitioner's April 19, 2012

discovery request solicit information concerning petitioner's ATC medical certificate case, as

well as his request under the Privacy Act to amend his official FAA medical file.[13]  The law

---

[13] Petitioner's First Set of Interrogatories and Request for Production of Documents at
interrogatory paragraphs 11, 12, 13, 15, 17, 19, 20, 21, 22 (questions concerning issuance of

judge ordered oral argument for the purpose of accepting parties' arguments on these motions.

   3. *Oral Argument*

   At the oral argument, petitioner's attorney reiterated his argument that the

Administrator's request for Princeton House records was a stall tactic, because the Administrator

already received everything he needed to decide petitioner was eligible for an ATC certificate.[14]

Petitioner's attorney acknowledged petitioner did not provide the records Dr. DeVoll requested,

and stated this failure to respond was simply because no such records existed.  Petitioner's

attorney did not discuss petitioner's failure to provide a signed release form to permit FAA

employees to discuss petitioner's diagnosis and treatment with Princeton House employees.

Petitioner's attorney admitted the law judge did not have authority to rule on the ATC medical

certificate decision, and acknowledged a ruling in favor of the Administrator would not alter

petitioner's ATC employment status or case involving his eligibility for an ATC medical

certificate.[15]  However, petitioner's attorney argued the FAA's request for Princeton House

records, and the Federal Air Surgeon's denial of his airman medical certificate, served as an

circuitous means for revoking petitioner's eligibility for ATC medical clearance.  In this regard,

petitioner's attorney argued if petitioner was found eligible to hold an airman medical certificate,

then he must <u>not</u> have a substance abuse or dependence problem, and therefore, would seemingly

---

(..continued)
petitioner's eligibility for an ATC medical certificate and ongoing arbitration related to
petitioner's employment) and 23 (question concerning "Steve Cooper's April 16, 2012 Privacy
Act appeal remand" and whether the Administrator will remove "the inaccurate breathalyzer
results from [petitioner's] file"); and at production request paragraphs 2, 12, 13, 14, 16 18
(documents related to petitioner's ATC file) and 19 and 20 (documents "responsive to
Mr. Cooper's [Privacy Act appeal] remand").

[14] Tr. 36.

[15] Tr. 56, 59.

be eligible to keep his ATC medical certificate and continue to work as an air traffic controller.[16]

In response to petitioner's argument that he needed more time and more discovery concerning whether the FAA's request for Princeton House records was pretext, the Administrator's attorney stated she offered to schedule a deposition of Dr. DeVoll and Dr. Michael Berry, Manager of the FAA Medical Specialties Division, on the issues of whether the Administrator's request for more records was reasonable, and whether petitioner had provided the records.  The Administrator's attorney summarized the Administrator's need for more Princeton House records by referring to Dr. DeVoll's February 16, 2012 letter and stating, "So, you know, we're issuing the medical certificates based on the belief that he has sobriety. Now we know he doesn't have sobriety.  We wanted to go back and find out, well, what actually happened when he was treated at Princeton House, then; you know, why has this gone wrong?"[17] The Administrator's attorney emphasized whether petitioner had an airman certificate under 14 C.F.R. part 67 did not affect petitioner's ATC certificate; in this regard, the Administrator's attorney stated if petitioner had an airman medical certificate under part 67, this would not mean he automatically had his ATC medical certificate.[18]  The Administrator's attorney stated the practical effect of ruling in favor of the Administrator in this case would be petitioner would not get his airman medical certificate until he provided the requested information.

In rebuttal, petitioner stated the ATC and airman medical certificate standards were the same; therefore, petitioner's attorney asserted the Administrator's request for more records was

---

[16] Petitioner's attorney stated petitioner's ATC employment status was currently the subject of ongoing employment arbitration, in which the National Air Traffic Controllers Association was representing petitioner.

[17] Tr. 83.

[18] Tr. 90.

pretext to ensure ultimately petitioner would not have an ATC medical certificate.  At the conclusion of the parties' arguments concerning whether more discovery was necessary, the law judge denied petitioner's motion for more time to conduct additional discovery concerning the ATC medical certificate, on the basis it was irrelevant.  The law judge found petitioner did not provide the requested records, nor a release allowing the FAA to obtain them.  As a result, the law judge determined additional discovery was not necessary.[19]

Following the order on additional time and discovery, the law judge instructed the parties to argue whether the Administrator's request for the Princeton House records was reasonable. Petitioner's attorney stated the FAA had more than 300 pages of medical information concerning petitioner, and asserted it is unreasonable for the Administrator to request more records.  The Administrator's attorney reiterated the argument that the request was reasonable, for the reasons Dr. DeVoll articulated in his February 16, 2012 letter.

B. *Law Judge's Order*

On January 11, 2013, the Chief Administrative Law Judge provided an oral decision in which he granted the Administrator's motion for summary judgment.  The law judge determined he need only decide two issues: whether the Administrator's request for additional medical information under § 67.413 was reasonable, and whether petitioner provided the requested information.  The law judge specifically stated he had not considered whether petitioner was currently or previously dependent on alcohol; instead, the only issues ripe for consideration involved the Administrator's request under § 67.413.

The law judge found petitioner did not provide the records the Administrator requested. The law judge noted petitioner did not try to explain why he failed to provide more records from

---

[19] Tr. 145, 159.

Princeton House, even though Dr. DeVoll sent letters requesting the records, and explained the need for the records in his February 16, 2012 letter. The law judge also determined the Administrator's request for the Princeton House records was reasonable. In particular, he found persuasive the Administrator's argument that standards for ATC medical certificate eligibility and the standards for airman medical certification were distinguishable, as 49 C.F.R. part 67 governs airman medical certification, while FAA Order 3930.3A[20] sets forth the requirements for ATC certification. The law judge found the Administrator's analysis and cases cited demonstrated a nexus between the Princeton House records sought and petitioner's eligibility for an airman medical certificate. As a result of these determinations, the law judge granted summary judgment, finding no genuine issues of material fact existed for resolution at hearing.

C. *Issues on Appeal*

Petitioner now appeals the law judge's order granting summary judgment. Petitioner argues the law judge erred in denying additional discovery, based on the recently enacted Pilot's Bill of Rights[21] and in Celotex v. Catrett.[22] In this regard, petitioner also asserts the law judge erred in granting summary judgment without first considering "any record evidence, admitted

---

[20] Air Traffic Control Specialist Health Program, FAA Order 3930.3A (Dec. 30, 1996), *available at* http://www.faa.gov/documentLibrary/media/Order/ND/3930.3A%20Change%201.pdf. On July 20, 2012, the FAA cancelled Order 3930.3A and replaced it with FAA Order 3930.3B. Because petitioner applied for his airman medical certificate in 2011, we refer to FAA Order 3930.3A in this Opinion and Order. We note such references, however are merely *references*, as we do not have authority to review the FAA's evaluation of petitioner's ATC medical eligibility.

[21] Pub. L. No. 112-153, 126 Stat. 1159, 112th Congr. § 2(a) (2012) (requiring the Board to apply the Federal Rules of Civil Procedure and Federal Rules of Evidence in all FAA certificate enforcement actions).

[22] 477 U.S. 317 (1986). In Celotex, the Supreme Court stated Federal Rule of Civil Procedure 56(f) permits denial of a motion for summary judgment if the non-moving party has not had the opportunity to engage in adequate discovery. Id. at 322.

exhibits, stipulated record, or sworn testimony."[23]  Petitioner also argues the law judge erred in

not suppressing evidence concerning petitioner's July 13, 2010 "criminal incident."[24]  Petitioner

further argues the law judge inappropriately shifted the burden of proof to petitioner, when the

Administrator has the burden of proof because the Administrator filed the motion for summary

judgment.  Regarding the applicable standards, petitioner claims the law judge erred in finding

FAA Order 3930.3A and 14 C.F.R. part 67 provide different standards for ATC medical

certificates and airman medical certificates, respectively.  Concerning the Princeton House

records, petitioner contends the law judge erred in finding the Administrator's request for these

records was reasonable.

**2.  *Decision***

Under 49 U.S.C. § 44703, this Board has jurisdiction to review petitions regarding the

FAA's denial of issuance of an airman certificate.  Furthermore, under the Board's Rules of

Practice, a party may file a motion for summary judgment on the basis the pleadings and other

supporting documents establish no genuine issue of material fact exists, and the moving party is

therefore entitled to judgment as a matter of law.[25]  In order to defeat a motion for summary

---

[23] Appeal Br. at 5.

[24] Id.

[25]  49 C.F.R. § 821.17(d).  The Pilot's Bill of Rights did not necessitate any changes to
§ 821.17(d).  The Board has long applied this standard in § 821.17(d).  See, e.g., Administrator v.
Wilkie, NTSB Order No. EA-5565 at 5 (2011); Administrator v. Doll, 7 NTSB 1294, 1296 n.14
(1991) (citing Fed. R. Civ. P. 56(e)); Administrator v. Giannola, NTSB Order No. EA-5426
(2009); see also Celotex Corp. v. Catrett, supra note 22 at 322-24 (stating a *genuine* issue exists
if the evidence is sufficient for a reasonable fact-finder to return a verdict for the nonmoving
party); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56 (1986) (stating an issue is
*material* when it is relevant or necessary to the ultimate conclusion of the case).

judgment, the nonmoving party must provide more than a general denial of the allegations.[26]

The law judge must view the evidence in the motion for summary judgment in the light most

favorable to the non-moving party. [27]

    A. *Adequacy of Discovery and Evidentiary Rulings*

    As petitioner argues, the Supreme Court's <u>Celotex</u> decision noted summary judgment is

appropriate after the parties have engaged in discovery to an adequate extent.  The Court based

this determination on Federal Rule of Civil Procedure 56(c), which provides summary judgment

is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."[28]  However, the Court stated

Rule 56 permits the disposition of a case via summary judgment when the nonmoving party

"fails to make a showing sufficient to establish the existence of an element essential to that

party's case."[29]  The Court further stated in such cases, this type of failure renders all other facts

immaterial.[30]  While the Court mentioned adequacy of discovery, the Court did not specify a

timeframe or types of discovery obligations would be required; instead, the Court indicated

summary judgment is proper in some cases even though the moving party has not supplied

affidavits in support of its motion.  The Court referred to Rule 56(a) and (b), which states a party

---

[26] <u>Administrator v. Hendrix</u>, NTSB Order No. EA-5363 at 5-6 n.8 (2008) (<u>citing</u> <u>Doll</u>, <u>supra</u> note 25, at 1296).

[27] <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962).

[28] <u>Celotex Corp. v. Catrett</u>, <u>supra</u> note 22 at 322 (quoting Fed. R. Civ. P. 56(c)).

[29] <u>Id.</u>

[30] <u>Id.</u> at 323.

may move for summary judgment "*with or without supporting affidavits.*"[31]   The Court stated

summary judgment is appropriate as long as the moving party has satisfied the standard in

Rule 56(c).

Based on the Court's analysis, <u>Celotex</u> does not support petitioner's contention that the

law judge erred in granting summary judgment in the absence of additional discovery.  Petitioner

admits he had not provided the Administrator with his Princeton House medical records, nor did

he transmit a signed release form permitting the Administrator to access such records and speak

with Princeton House staff.  This failure clearly establishes a violation of § 67.413(a), provided

the Administrator's request for the records was reasonable.[32]   Petitioner concedes the questions

he seeks to ask witnesses in depositions involve the substance abuse or dependence issue rather

than whether the Administrator's request for the Princeton House records was reasonable.[33]

Moreover, at various times during the oral argument, petitioner's attorney stated no records from

Princeton House exist.  In light of his requests for deposition testimony of Dr. DeVoll and others

at the FAA, this statement is perplexing, because if no records exist, then petitioner should not be

seeking additional discovery on the reasonableness or alleged "pretext" issue, but instead should

simply provide an affidavit certifying he provided *all* records from Princeton House to the

Administrator.[34]

Concerning petitioner's assertion that the law judge erroneously shifted the burden of

proof to petitioner, we agree the Administrator was the movant requesting summary judgment,

---

[31] <u>Id.</u> (emphasis in original).

[32] The next section of this opinion discusses the reasonableness of the Administrator's request.

[33] Tr. 136.

[34] We note, however, that this would not dispose of the issue of the Administrator's request for a signed release.  At the oral argument, petitioner's attorney did not address the request for a signed release.

and therefore must establish no genuine issues of material fact require resolution.[35]  The

Administrator did so in this case.  Petitioner did not provide the requested records, or a signed

release to the Administrator.  Furthermore, petitioner did not challenge the assertions in

Dr. DeVoll's letter, regarding the relevancy of petitioner's treatment plan from Princeton House.

Instead, amid a myriad of discovery arguments, petitioner offers only a general assertion that the

Administrator's request for the records is unreasonable.  Under Celotex and our jurisprudence,

this assertion will not fulfill petitioner's obligation to provide more than a general denial or

assertion, once the moving party has fulfilled the standard set forth in 49 C.F.R. § 821.17(d).[36]

Petitioner further argues the law judge erred in failing to suppress records related to

petitioner's arrest in July 2010.  In his order granting summary judgment, the law judge clearly

stated he had not considered petitioner's blood alcohol content, because "the state court had

found that that blood alcohol level was invalid due to the fact that the arresting officer or the

officer that administered the test used a device that was not calibrated."[37]  The law judge stated

the information was not admitted as evidence and did not affect his decision concerning the

motion for summary judgment.  Based on the law judge's granting of petitioner's motion to

suppress the arrest information, petitioner's argument on appeal concerning this evidentiary

ruling is confusing.  To the extent petitioner argues the law judge must have considered some of

the arrest records in reaching his decision, we note petitioner has not satisfied our long-held

---

[35] Supra note 25.

[36] Celotex, supra note 22 at 322 (stating when the nonmoving party bears the burden of proof at
trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to
establish the existence of an element essential to [its] case"); see also Hendrix, supra note 26 at
5-6 n.8.  In the case at hand, petitioner bears the burden in the case on the merits.  49 C.F.R.
§ 821.25.

[37] Order Granting Summary J. at 191.

standard for overturning a law judge's evidentiary ruling.[38]

B. *Reasonableness of FAA Request for Princeton House Records*

In his appeal, petitioner primarily relies on his contention that the Administrator's request for the records was unreasonable, as it was designed to stall petitioner's procurement of his medical certificate. Petitioner claims if he has his airman medical certificate, then it logically follows he must be eligible for his ATC certificate. Therefore, petitioner would maintain his employment as an air traffic controller. Petitioner contends Dr. DeVoll's request for the Princeton House records was designed to keep petitioner from obtaining his airman medical certificate while his ATC employment matter proceeded through arbitration, in accordance with an applicable collective bargaining agreement.

Petitioner's pretext argument is problematic, for several reasons. First, petitioner presumes he would be eligible for an airman medical certificate even if the Administrator had not requested any Princeton House records. However, § 67.107(a)(4) clearly precludes eligibility for a first-class medical certificate if any medical history or clinical diagnosis of substance dependence exists. Even though the breathalyzer machine was not properly calibrated, petitioner does not deny he was arrested for an alcohol-related event in July 2010, after getting into an altercation with a friend. In medical certificate application cases, the petitioner has the burden of proving he or she is eligible for the certificate.[39] Petitioner's assumption that he would be able to fulfill the burden and obtain an airman medical certificate is, at best, tenuous. Second,

---

[38] We review law judges' evidentiary rulings under an abuse of discretion standard, provided the respondent can also show he or she suffered prejudice as a result of the rulings at issue. See, e.g., Administrator v. Martz, NTSB Order No. EA-5352 (2008); Administrator v. Giffin, NTSB Order No. EA-5390 at 12 (2008); Administrator v. Zink, NTSB Order No. EA-5262 (2006); Administrator v. Van Dyke, NTSB Order No. EA-4883 (2001).

[39] 49 C.F.R. § 821.25; Petition of Bartel, NTSB Order No. EA-5622 at 5 n.10 (2012).

petitioner argues the Administrator is attempting to stall his airman medical certificate

application, yet he asserts he needs *more time* to conduct additional discovery.  Third, petitioner

contends his pretext argument is convincing because the ATC and medical certificate standards

are the same.  Petitioner asserts the Administrator did not request the Princeton House records in

considering petitioner's eligibility for an ATC certificate; therefore, petitioner contends the

Administrator is precluded from requesting them in evaluating whether petitioner is eligible for

an airman medical certificate.  The plain language of § 67.413(a), however, does not provide

such a qualifier.  In fact, the only standard the Administrator must fulfill in requesting records for

an airman medical certificate is to ensure the request is *reasonable*.[40]  To the extent petitioner

contends the Administrator's failure to request the Princeton House records in the ATC

certification process establishes the request is now *unreasonable*, we disagree.  Part 67 sets forth

specific requirements concerning eligibility for medical certificates, including the requirement

that an applicant not have an established medical history or clinical diagnosis of substance

dependence, except where there is established clinical evidence, satisfactory to the Federal Air

Surgeon, of recovery.[41]  FAA Order 3930.3A includes a similar, but not identical, standard.[42]  The

Order also establishes a process for the provision of ATC medical certificates different than the

---

[40] <u>Administrator v. Woznick</u>, NTSB Order No. EA-3726 (1992); <u>see also</u> <u>Administrator v. Applegarth</u>, 3 NTSB 3177, 3178 (1980).

[41] 14 C.F.R. 67.107(a)(4).

[42] FAA Order 3930.3A at Appendix 1 at 4, ¶ h (stating the FAA utilizes "[a] history, review of all available records, clinical and laboratory examination" in determining whether an applicant exhibits "the presence or absence of substance dependency, including alcohol, narcotic, and non-narcotic drugs."  The Order also requires, "[w]herever clinically indicated, the applicant must demonstrate an absence of these on thorough psychiatric evaluation, including any clinical or psychological tests required as part of the medical evaluation").

process set forth in part 67.[43]  The differences between FAA Order 3930.3A and 14 C.F.R. part

67 are understandable, given the fundamental distinctions between an air traffic controller's

duties and an airman's duties.

Finally, concerning the overall reasonableness of the Administrator's request for the

Princeton House records, we find the law judge did not err in determining the request was

reasonable.  Both Dr. DeVoll's February 16, 2012 letter and Dr. Michael Berry's affidavit explain

the Administrator's rationale for seeking additional records.  Dr. Berry's affidavit states the

Princeton House records are necessary to the Administrator's review of petitioner's application

"following his documented return to consuming alcohol in 2010 after having had a previous high

tolerance … driving while intoxicated incident in October of 2004 and his subsequent assurance

to the FAA that he had ceased drinking."[44]  This description, combined with Dr. DeVoll's letter,

suffice to fulfill the Administrator's reasonableness burden.

In sum, we conclude the Administrator established no material issues of genuine fact

exist, as the Administrator's request for the Princeton House records and information was

reasonable, and petitioner has not provided the records or a signed release.  Therefore, petitioner

violated 14 C.F.R. 67.413(a).  The penalty for this violation is denial of petitioner's application

for an airman medical certificate, until such time as petitioner provides the requested information

or otherwise reaches a resolution with the Administrator concerning the application.

---

[43] *Compare* FAA Order 3930.3A at 19-27 (describing procedure for obtaining ATC medical clearance and requesting reconsideration of flight surgeon's denial of such approval) *with* 14 C.F.R part 67, subpart E (titled "Certification Procedures" and describing process for obtaining a special issuance of an airman medical certificate) and 49 C.F.R. part 821, subpart C (the Board's Rules of Practice setting forth procedures for reviewing denials of airman medical certificates).

[44] Affidavit of Michael Berry, M.D. at 3, ¶ 7 (May 31, 2012).

**ACCORDINGLY, IT IS ORDERED THAT:**

1.  Petitioner's appeal is denied;

2.  The law judge's order is affirmed; and

3.  The denial of petitioner's application for a medical certificate is affirmed.


HERSMAN, Chairman, HART, Vice Chairman, and SUMWALT, ROSEKIND, and WEENER, Members of the Board, concurred in the above opinion and order.

UNITED STATES OF AMERICA

NATIONAL TRANSPORTATION SAFETY BOARD

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
Petition of:                          *
                                      *
ROBERT JOHN REPETTO                   *
                                      *
for review on the denial by the       *   Docket No.:  SM-5275
Administrator of the Federal           *   JUDGE MONTAÑO
Aviation Administration of the         *
issuance of an airman medical          *
certificate.                           *
                                      *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

National Transportation Safety Board
490 L'Enfant Plaza East, S.W.
Second Floor, Suite 2100A
Washington, D.C. 20694

Friday,
January 11, 2013

The above-entitled matter came on for hearing, pursuant

to Notice, at 9:30 a.m.

BEFORE:  ALFONSO J. MONTAÑO
         Chief Administrative Law Judge

APPEARANCES:

On behalf of the Administrator:

SUSAN S. CARON, Esq.
Federal Aviation Administration
800 Independence Avenue, S.W.
Room 918K, AGC-300
Washington, D.C. 20591
(202) 267-7721


On behalf of the Respondent:

JOSEPH MICHAEL LAMONACA, Esq.
131 North Dupont Highway
New Castle, Delaware
(610) 558-3376
avlaw@prodigy.net

1              P R O C E E D I N G S

2                                              (9:30 a.m.)

3          ADMINISTRATIVE LAW JUDGE MONTAÑO:  We are on the record

4    in the case of the petition of Robert John Repetto, Docket Number

5    SM-5275.  I am going to make a ruling on the motion for summary

6    judgment that was filed by the Administrator.

7          RULING ON ADMINISTRATOR'S MOTION FOR SUMMARY JUDGMENT

8          ADMINISTRATIVE LAW JUDGE MONTAÑO:  This has been a

9    proceeding before the National Transportation Safety Board held

10   pursuant to the provisions of 49 U.S.C. 44703(d).  The case is

11   captioned, again, "The petition of Robert John Repetto for review

12   of the denial by the Administrator, the Federal Aviation

13   Administration of the issuance of an airman medical certificate."

14   The case number, as I indicated, is SM-5275.

15          The proceeding was conducted in accordance with the

16   provisions of the Act, the Board's Rules of Practice and pertinent

17   sections of the Administrative Procedure Act.  The Federal Rules

18   of Evidence and the Federal Rules of Civil Procedures were

19   applicable to this proceeding.

20          Petitioner is represented by Joseph Michael Lamonaca,

21   Esquire.  The Administrator is represented by Susan Caron, who is

22   an attorney representing the Administrator.  Petitioner, Robert

23   John Repetto, was present in the courtroom throughout these

24   proceedings.

25          This on-the-record proceeding, as I discussed yesterday,

1   was for the purpose of hearing all arguments and a number of

2   outstanding motions in this case.  Arguments relative to

3   Petitioner's motion for reconsideration of the extension of time

4   for a summary judgment until the completion of discovery and the

5   Administrator's motion for summary judgment were made yesterday,

6   January 10th, 2013.

7            I also made a ruling as to one of the issues that was

8   raised by Respondent as to the suppression of the record of the

9   arrest of Mr. Repetto.  I agreed that the blood alcohol level in

10  that case could not be used in this case, because the state court

11  had found that that blood alcohol level was invalid due to the

12  fact that the arresting officer or the officer that administered

13  the test used a device that was not calibrated.  Therefore, that

14  information cannot come into this hearing and did not come into

15  this hearing and does not affect my decision as to this ruling on

16  the motion for summary judgment.

17           After yesterday's initial arguments during the morning

18  hours, I made a ruling, denying Petitioner's motion for

19  reconsideration of extension of time to rule on the motion for

20  summary judgment until the completion of discovery.  There's a

21  lengthy discussion about that ruling on the record.  I ruled that

22  based on the arguments of the parties, I could not find that

23  additional discovery by Petitioner would be relevant or necessary

24  to make a ruling on the Administrator's motion for summary

25  judgment.

1          It must be noted that the Petitioner's counsel noted

2     that should I rule against Petitioner on the motion for an

3     extension of time to rule on the motion for summary judgment until

4     discovery is completed, that he felt -- that it was Petitioner's

5     position that there was enough information in the record for me to

6     rule on the motion for summary judgment.

7          As part of my ruling on the Petitioner's initial motion,

8     I ruled that the case and the motion for summary judgment

9     presented two issues, as was articulated by the Administrator.

10    The first issue is whether the Acting Administrator -- or whether

11    the Administrator's request for additional medical information

12    under 14 CFR Section 67.413 was reasonable; and second, whether

13    the Petitioner provided the requested information.

14          That is the issue that is before me, as to what

15    occurred, and that's basically my decision in this case, is to

16    determine if the information was provided, and was the request

17    reasonable.  This case does not involve -- and I don't have the

18    authority to hear witnesses and make decisions as to whether or

19    not Mr. Repetto is alcohol-dependent -- which would, according to

20    Petitioner's counsel, may have some impact on a pending employment

21    action, as Mr. Repetto is an air traffic controller.  My decision

22    in this case would essentially and would only be whether or not

23    the request was reasonable and whether the information was

24    provided.

25          That decision would be made.  And at the end of the

1    decision, should I rule for the Respondent, my ruling would not

2    instruct the Administrator to issue a medical certificate to

3    Mr. Repetto.  I don't have that authority.  The only authority I

4    have in this case is to determine whether or not the

5    Administrator's request was reasonable.  If I find that it was not

6    reasonable, the case would go back to the Administrator, and the

7    Administrator would then make a determination either to ask you

8    for more information, Mr. Repetto, or make a decision based on the

9    information they had, and it's up to them to issue you a

10    certificate.

11        So I want to make it clear that my jurisdiction is

12    limited in that respect.  I can only make decisions on those two

13    issues.  The effect of that decision is limited as well.  I don't

14    have authority to make decisions about the employment aspects of

15    your appeal to the ATC about your air traffic control employment.

16    I think you understand that.  I don't have the authority to make

17    decisions as to your privacy appeal that you had made, and I hope

18    you understand that as well.

19        I can only rule on what is before me.  The Administrator

20    is simply arguing, one, they requested information; two, the

21    information wasn't provided.  They denied the medical certificate,

22    your application for airman second-class medical certificate based

23    on the fact that you did not provide the information.

24        During the arguments yesterday, on January 10th, counsel

25    for Petitioner conceded that Petitioner did not provide the

1  medical records requested by the Administrator nor did Petitioner

2  provide the requested release so that the Administrator could

3  obtain the requested records and/or discuss those records with the

4  staff of Princeton House Behavioral Health.  The Petitioner did

5  provide two pages of documents from Princeton House Behavioral

6  Health, which the Administrator argued did not comply with the

7  request for the records made by the Administrator.

8       I must note also that there has been nothing before me

9  that indicates that there was any response to the Administrator

10  which attempted to explain why the documents were not provided

11  other than the legal arguments that the request was unreasonable.

12  There is no indication that there was an attempt in the record

13  before me to obtain the documents, that the documents don't exist,

14  that the documents were destroyed.  There's nothing of that nature

15  in the arguments before me or the papers before me.

16       Thus, by the end of the morning session of oral

17  arguments on January 10th, it was established that there were only

18  two pages of Princeton House Behavioral Health records in the

19  Petitioner's blue ribbon file.  And Petitioner provided the same

20  two pages in response to the Administrator's request for records

21  from Princeton House Behavioral Health.

22       I therefore concluded that there was only one issue to

23  be addressed in the arguments in the afternoon session, and that

24  issue was whether or not the Administrator's request for the

25  records at issue in this case from Princeton House Behavioral

1   Health was reasonable.

2        The parties did not object to that process.  The parties

3   made their respective arguments, and I adjourned the proceedings

4   to consider the arguments and to determine if I could rule on the

5   motion for summary judgment.  I took the time to do that so that I

6   could carefully consider the arguments and my notes and review the

7   documents I did have before me so that I could make an informed

8   and considered decision.

9        Having considered the respective parties' arguments on

10  the issue, I am now prepared to make a ruling on the

11  Administrator's motion for summary judgment.  First, I will talk

12  about the Administrator's argument, then I will talk about the

13  Petitioner's argument, and then I will make a ruling.

14       The Administrator's specific request for medical records

15  is contained in two letters addressed to the Petitioner that were

16  sent by Dr. James R. DeVoll.  The first is dated November 8th,

17  2011.  Dr. DeVoll is the manager of the Medical Appeals Branch,

18  Medical Specialties Division, in the Office of Aerospace Medicine.

19  In the letter, Dr. DeVoll informed Petitioner that he reviewed the

20  information contained in the Petitioner's Agency medical file in

21  support of his application for February 8, 2011, for a second-

22  class airman medical certificate.

23       The letter indicates that Dr. DeVoll informed the

24  Petitioner that we need additional information in order to

25  determine your eligibility for a special issuance under 14 CFR

1  Part 67.401.  The letter specifically requested that the

2  Petitioner have Princeton House Behavioral Health records sent

3  directly to the Administration, preferably in one mailing, records

4  of all evaluations, treatments, whether inpatient or outpatient,

5  rehabilitation, recovery, aftercare and any other services

6  provided by Princeton House Behavioral Health, to include, but not

7  limited to the years 2004 to the present.  The letter specifically

8  requests that Petitioner have Princeton House Behavioral Health

9  send them, again, directly to them.  The letter also requested

10  Petitioner to provide a signed and dated release authorizing the

11  FAA Office of Aerospace Medicine staff and the clinic or

12  administrative staff at Princeton House Behavioral Health to

13  discuss all the aspects of the case.

14        The second letter is dated February 16, 2012.  In that

15  letter, Dr. DeVoll informed Petitioner that they had received a

16  letter from Mr. Lamonaca, who is Petitioner's counsel.  In that

17  letter, Mr. Lamonaca, attached a letter from Natalie Edmund of

18  Princeton House Behavioral Health, dated December 19, 2006, that

19  confirmed Petitioner's treatment during the period of October 20,

20  2004 through December 2, 2004.  Dr. DeVoll informed Petitioner

21  that the letter did not meet the requirements of the original

22  request for the actual clinical records of Petitioner's treatment

23  at Princeton House Behavioral Health.

24        Dr. DeVoll explained that the information in

25  Petitioner's medical file indicated he was arrested for driving

1  while intoxicated on October 8, 2004, and a toxicology analysis of

2  October 22, 2004 reported positive for alcohol of 0.306 volume per

3  weight.  The information also indicated that in addition to

4  voluntarily seeking treatment at Princeton House Behavioral

5  Health, that Petitioner was required to complete an intoxicated

6  driver program, his driving privileges were suspended for 9

7  months, and for a period, he was required to use an Interlock

8  device.

9      The letter from Vija Nagulis (ph.) of November 29, 2004,

10  from Princeton House Behavioral Health states that the Petitioner

11  underwent 6 weeks of intensive outpatient therapy to, in part,

12  establish and maintain sobriety, stabilize on psychotropic

13  medication, as needed, utilize the 12-step approach to recover,

14  with plans for follow-up individual therapy and attendance at A.A.

15  meetings.

16      Petitioner sent a letter on November 29, 2006 to the FAA

17  stating that he had completely quit drinking, and it suggested

18  there was a plan of recovery.  However, he had an alcohol-related

19  event resulting in his arrest, indicating that the Petitioner was

20  not maintaining sobriety.

21      The letter from Dr. Devoll further indicates that on

22  February 8, 2011, application for a second-class airman medical

23  certificate was for an unrestricted medical certificate, and the

24  information requested would be used to determine Petitioner's

25  qualifications for an unrestricted medical certificate or his

1    eligibility for a special issuance.  "The information that we

2    requested," Dr. DeVoll indicated, "regarding your treatment at

3    Princeton House Behavioral Health is reasonable and relevant to

4    clarify your diagnosis and your qualification for an airman

5    medical certificate."  The letter again requested the information

6    outlined in the previous letter and again informed Petitioner that

7    if the information was not received within 30 days, the FAA would

8    have no alternative except to deny his application in accordance

9    with 67.413(a).

10         The February 16th letter from Dr. DeVoll again asked for

11   the records, that they be sent directly to the FAA and that the

12   Petitioner provide a signed and dated release.

13         The Administrator argues that the medical information

14   requested is highly relevant to the Administrator's consideration

15   of Petitioner's application for a medical certificate.  The

16   Administrator argues that the Petitioner is required to provide

17   the records under 14 CFR 67.413, and the underlying statutory

18   authority in 49 U.S.C. 44703, requires the Administrator after

19   investigation, to make a medical certification decision and not

20   leave that decision as to what records to look at to the airman to

21   decide what medical information is reasonable and relevant for the

22   Federal Air Surgeon to consider.

23         The Administrator cites the case of the *Petition of*

24   *Woznick*, NTSB Order No. EA-3726, in which the Board held that the

25   FAA's request for medical information is reasonably premised when

1    what is sought might assist the Administrator in determining the

2    airman's medical qualification.   That is what the Administrator is

3    arguing in this case, that Dr. DeVoll's letter specifically says

4    that he needs that information to help him on behalf of the

5    Administrator to make a determination as to the Petitioner's

6    medical qualifications.

7            The Administrator argues that if the Petitioner has his

8    way, the Federal Air Surgeon would be expected to make a

9    certification decision following Petitioner's second alcohol-

10   related arrest without complete medical history regarding his

11   fairly lengthy treatment at Princeton House Behavioral Health

12   following his arrest with a blood alcohol content that revealed

13   possible increased tolerance at that time.   The Administrator

14   argues that a review of all of the records requested from

15   Princeton House Behavioral Health would be relevant to assist the

16   Administrator in determining Petitioner's medical qualification

17   and the request for the records was reasonable.

18           As counsel for the Administrator argued yesterday, there

19   is a continuum that they were looking at in this case, in that

20   something occurred in 2004, there appeared to be a period of

21   sobriety, and then suddenly there was no longer sobriety and there

22   was an arrest, an alcohol-related arrest.   According to the

23   Administrator, they want these records so that they can figure out

24   specifically what has occurred during that period of time and to

25   help them make a determination of how to decide one way or the

1  other whether you, Mr. Repetto, are entitled to a medical

2  certificate.

3          The Administrator asserts that to make a favorable

4  certification without complete records under the circumstances of

5  this case would be contrary to the interest of aviation safety.

6  Conversely, the Administrator argues that it would be

7  irresponsible and contrary to the authority conferred on the

8  Administrator to make an adverse certification decision based on

9  incomplete information.

10          Ms. Caron argued yesterday the office that issues

11  medical certificate for the Federal Aviation Administration --

12  their purpose is to issue certificates, not to deny certificates.

13  They want to make, informed decisions as to whether or not a

14  certificate can be issued.

15          The Administrator argues that there's no question that

16  the Petitioner has not provided the requested medical information,

17  and the Petitioner has conceded as much.  However, I must also

18  note for the record, Petitioner's counsel has also appeared to

19  suggest in his arguments that there are other Princeton House

20  Behavioral Health records that are, for unknown reasons, are not

21  in Petitioner's blue ribbon medical file.

22          To clarify that, the Administrator -- as part in

23  response to the Petitioner's reply to the Administrator's motion

24  for summary judgment, filed a sworn affidavit from Dr. Michael

25  Berry, who stated under oath that he conducted a search of

1   Petitioner's blue ribbon file.  Dr. Berry indicates that his

2   search revealed Petitioner's airman medical file contained two

3   documents from Princeton House Behavioral Health, which are both

4   letters from the case manager, one dated November 29, 2004, which

5   states Petitioner started his intensive outpatient program on

6   October 20, 2004 and was scheduled to complete it on December 2,

7   2004.  The second letter dated December 19, 2006 merely

8   acknowledges the dates of Petitioner's intensive outpatient

9   program.

10          The affidavit further indicates that Dr. Berry spoke to

11  Dr. Finkelstein and Dr. Jordan, who both indicated that the only

12  documents they reviewed in making their reports or making their

13  comments in the Petitioner's blue ribbon file were the two letters

14  from Princeton House Behavioral Health.  Therefore, the

15  Administrator argues that there are no other records in the file

16  or there are no other records that were relied upon by anyone

17  else, whether it was relevant to the ATC, air traffic control,

18  action taken against Mr. Repetto or whether it was dealing with

19  the issuance of his second-class airman medical certificate.

20          The Petitioner filed a response to that, but in that

21  response there was no affidavit which contradicted the statements

22  of Dr. Berry.  There was essentially the argument that it was

23  unfathomable or inconceivable that there could not be more records

24  that were reviewed by these evaluators.  However, in a sworn

25  statement by Dr. Berry, an affidavit, which are allowed to be used

1   in motions for summary judgment, those were the only two

2   documents, the documents that I identified and the documents

3   identified in Dr. Berry's affidavit, which exist in Mr. Repetto's

4   airman medical file.

5          Finally, the Administrator accurately argues that the

6   Petitioner does not advance any arguments as to why the specific

7   request in the letters by Dr. DeVoll are not reasonable.  That

8   completes my general analysis of the Administrator's arguments.

9          As to the Petitioner's argument, Petitioner argues that

10  the request for the Princeton House Behavioral Health records are

11  a pretext and a red herring.  In his written response to the

12  Administrator's motion for summary judgment, Petitioner argued

13  that the Administrator already possessed whatever 2004 documents

14  from Princeton House Behavioral Health that existed.  In oral

15  arguments, Petitioner conceded that there were only two pages of

16  documents from Princeton House Behavioral Health in Petitioner's

17  blue ribbon file.  He also conceded he did not know if those two

18  pages were all of the records in existence from Princeton House

19  Behavioral Health.  And again, Petitioner has conceded that he did

20  not provide the records specifically requested by the

21  Administrator.

22         Petitioner's arguments also rest on the evaluation

23  conducted by Dr. Mario Finkelstein on December 16, 2010, which is

24  attached to Petitioner's response to the motion for summary

25  judgment at Exhibit B, which indicates that Dr. Finkelstein

1   reviewed the medical records from Princeton House in conjunction

2   with the personnel action against Petitioner's ATC medical based

3   on the 2010 alcohol-related arrest.  Petitioner also cites a

4   December 1, 2010 letter authored by Dr. Jordan of the FAA who

5   indicated that Dr. Finkelstein had all of the evaluation

6   requirements to make the adverse decision as to Petitioner's ATC

7   medical.

8           Petitioner argues that Dr. Finkelstein did not require

9   additional information from Princeton House Behavioral Health.

10  He, according to Petitioner, was able to make a decision relative

11  to Petitioner's ATC medical without additional records from

12  Princeton House.  Dr. Finkelstein did not request those documents

13  in the past and he did not request them for his December 16, 2010

14  letter.  Respondent argues that Petitioner had obtained ATC

15  medicals after his 2004 treatment at Princeton House Behavioral

16  Health and the records for Princeton House Behavioral Health were

17  never requested during that period of time but were only requested

18  after the 2010 alcohol-related event.

19          The Petitioner argues that because Dr. Finkelstein, as I

20  said, did not request additional information to make his

21  determination, that Dr. DeVoll's request for additional Princeton

22  House Behavioral Health records is unreasonable.  He too should

23  have been able to make the same decision about qualifications with

24  the same information.

25          Furthermore, Petitioner argues that Dr. Jordon indicated

1    in his letter that Dr. Finkelstein had all the evaluation

2    requirements to make his decision relative to his role in this

3    process as far as Petitioner's ATC medical and employment issues.

4    Therefore, Dr. DeVoll should have also had enough information and

5    enough evaluation requirements to make his decision about

6    Mr. Repetto's request for a second-class medical.  Because

7    Dr. Jordan and Dr. Finkelstein did not need these records,

8    Petitioner argues it is unreasonable for Dr. DeVoll to request

9    them.

10            Petitioner argues that the evaluation as to the air

11   traffic control second-class employment medical for Petitioner is

12   the same evaluation conducted to determine if an airman qualifies

13   for an airman medical certificate under Part 67.  The

14   Administrator argues, on the other hand, that the evaluations

15   under Part 67 and the evaluation conducted for the air traffic

16   control second-class employment medicals are not the same and do

17   not entail the same evaluation methods or criteria or even have

18   the same motivation as the basis for those evaluations.  The

19   Administrator cites the fact that the ATC medicals are governed by

20   3930.3A while airman medical standards are governed by a different

21   section, Part 67, and involve different standards.

22            There are two different standards, according to the

23   Administrator.  One is to clear the Petitioner to be employed as

24   an air traffic controller to control aircraft, as Mr. Lamonaca

25   indicates, in a very busy -- one of the country's busiest air

1    spaces.  The motivation of the Administrator to make that

2    evaluation is different than that of the Administrator relative to

3    whether or not Mr. Repetto can fly a private aircraft in American

4    airspace.

5           I found that the arguments of the Administrator as to

6    the different citations for the standard to be more compelling and

7    convincing than the Petitioner's unsupported assertion that the

8    two standards are the same.  I have no evidence to show that they

9    are the same.  I do have arguments and citations from the

10   Administrator to different regulations that are used to make the

11   determination for a second-class airman medical and a second-class

12   ATC medical.  They're two different sections.  They're not the

13   same section.

14          Indeed, if the standards were the same, Dr. DeVoll would

15   have been bound by the ATC standards for the issuance of a medical

16   certificate and he would have outright denied the Petitioner's

17   airman medical the same way the Petitioner's ATC medical had been

18   denied, when he was suspended from performing ATC duties after his

19   2010 alcohol-related arrest.  If indeed circumstances are as

20   Petitioner's counsel argues, we wouldn't be here.

21          Based on the arguments advanced by the parties, I do not

22   find the Petitioner's arguments are persuasive, convincing or

23   establish that the Administrator's request for additional medical

24   records from Princeton House Behavioral Health is not relevant or

25   reasonable.  The fact that Dr. Finkelstein did not request

1   additional records from Princeton House does not preclude

2   Dr. DeVoll from requesting additional documents to make his

3   determination, a separate and distinct determination.

4           Petitioner does not even suggest let alone provide any

5   citation to law or fact that establishes that Dr. DeVoll is bound

6   by the determination by Dr. Finkelstein or anything that is said

7   in any writing by Dr. Jordan.  The Administrator has persuasively

8   argued that Dr. Finkelstein's evaluation was based on different

9   standards, addressing Petitioner's ATC medical and the issue of

10  Petitioner's ATC employment, not Petitioner's request for second-

11  class airman medical, as it should be evaluated under the

12  standards of Part 67.

13          I find that the Administrator's request that the

14  Petitioner provide additional medical records from Princeton House

15  is relevant and reasonable.  The arguments and the letters from

16  Dr. DeVoll, as I indicated, show a continuum and a reason why

17  those documents are necessary.  There was an alcohol arrest, high

18  alcohol content per body weight at that time in 2004, a period of

19  sobriety, then another incident.  All of these things were

20  necessary, as the Administrator argues, to determine what the

21  condition of Mr. Repetto is at this time.  All of that information

22  is relevant.  It's necessary for Dr. DeVoll to make his

23  determination as to whether or not Mr. Repetto is entitled to a

24  second-class airman medical so that he can fly a private aircraft.

25          I find that the Administrator's request of the

1   Petitioner to provide these records, as I indicated, is relevant

2   and reasonable.  The request is relevant as to what appears to be

3   Petitioner's apparent ongoing problems with alcohol, but that is

4   uncertain based on the fact that we don't have all the records, or

5   the Administrator doesn't have all the records.  And again, that's

6   not something I am entitled to make or have the authority to make,

7   whether Mr. Repetto has an alcohol problem.  My issue is whether

8   the records were provided or not.

9          His treatment at Princeton House Behavioral Health from

10  October 20, 2004 to the present would assist the Administrator in

11  determining the airman's medical qualifications.  As indicated in

12  the cases cited by the Administrator, it shows that there is a

13  reasonable basis, that there is a nexus between what has occurred

14  and what the records they're seeking.  I find that it is

15  reasonable.  Thus, I find that the Administrator's request for the

16  additional records for Princeton House Behavioral Health to be

17  reasonable.

18         Under Rule 17(d) of the Board's Rules of Practice in Air

19  Safety Proceedings, codified at 49 CFR 821.17(d), a party may file

20  a motion for summary judgment on the basis that the pleadings and

21  other supporting documentation establish that there are no

22  material issues of fact to be resolved and the party is entitled

23  to judgment as a matter of law.

24         The case before me presents two issues, whether the

25  Administrator's request for medical information was reasonable

1    and, two, whether the Petitioner provided the requested

2    documentation.  Having found that the Administrator's request for

3    additional medical information from Petitioner in this case is

4    reasonable and relevant, and further finding that Petitioner has

5    conceded during oral argument that he did not provide the specific

6    medical records requested by the Administrator, I must conclude

7    that there are no material issues of fact remaining for resolution

8    in this case.

9          I therefore find that the Federal Air Surgeon's denial

10   of Petitioner's application on this basis, the basis that he did

11   not provide the medical records, is proper as a matter of law, and

12   summary judgment for the Administrator must and hereby is granted.

13         THEREFORE, IT IS ORDERED that the Administrator's motion

14   for summary judgment is granted.

15         Having ruled in favor of the Administrator as to the

16   motion for summary judgment, the other issues before me, or the

17   other motions that I noted we would discuss in these proceedings -

18   - are moot.  They were filed after the motion for summary

19   judgment.  I did note to the ruling that I did make relative to

20   the suppression of the alcohol blood content, or the breathalyzer

21   information.

22                              APPEAL

23         ADMINISTRATIVE LAW JUDGE MONTAÑO:  Now, what this means,

24   as your counsel will tell you, Mr. Repetto, is that you have a

25   right to an appeal.  This is a dispositive motion.  I have ruled

1    that there's no reason to have a hearing.  What that means is that

2    I've granted the Administrator's motion and I found that the

3    request is reasonable, and as you've indicated, you didn't provide

4    the records.  If I had found otherwise, if I had found that their

5    -- the Administrator's request was unreasonable and ruled in your

6    favor, I could not have forced the Administrator to issue you a

7    second-class airman medical.  That would basically go back to the

8    Administrator, and they would have to determine whether you're

9    entitled to a second-class airman's medical based on the

10   information they have.

11          So that is my authority.  That is the only jurisdiction

12   I have.  As Mr. Lamonaca indicated, the Administrator boxed

13   himself into this issue; I am boxed into the same issue.  And

14   based on the issue, I can only decide -- I have to rule on -- this

15   matter the way that I have.

16          You have a right to an appeal.  And Mr. Lamonaca is an

17   experienced aviation lawyer.  He knows the basis for appeal.  But

18   what I'm going to do, just for the record, is to hand to the

19   court reporter the appeal rights that you have.  The decision --

20   my decision to grant the motion for summary judgment can be

21   appealed to the full Board.  They'll review the record and

22   determine whether or not I made an error of law in deciding this

23   way.  And they will either reverse me, remand the case to me, or

24   else affirm my decision.

25          So that is what will occur.  And again, if it's remanded

1    to me, it'll be for the same type of a proceeding.  If we have a

2    hearing, again, it'll only deal with the two issues before me.  It

3    won't deal with any witnesses telling me how many drinks you had

4    on the day that you were arrested or whether you were fleeing the

5    scene for your own safety or whether or not an expert believes you

6    have an alcohol problem.  That's not the issue before me.

7            Therefore, if it is remanded and I hear the case, you

8    have to be prepared that I can only hear evidence about whether

9    the request was reasonable and whether or not you provided the

10   information.

11           I take no pleasure in issuing this decision, Mr.

12   Repetto.  I know that you have your career before you, and you've

13   -- certainly, you've attained great things becoming an ATC, air

14   traffic controller.  But based on what is before me, this is the

15   decision I had to make.  And again, you have a right to an appeal,

16   and I wish you all the best in the future, and hopefully, whatever

17   occurs, that things go well for you.

18           Before I go off the record, are there any material

19   errors that I have made, specifically relative to names or

20   citations that the parties wish me to note and make changes in?

21   Mr. Lamonaca?

22           MR. LAMONACA:  If I might be heard, Your Honor, I just

23   want to -- for the Board's purposes --

24           ADMINISTRATIVE LAW JUDGE MONTANO:  Well, then you can

25   argue to the Board.  Is there any certificate -- are there any

1  errors here?

2          MR. LAMONACA:  I just need a clarification of your

3  order.  Everything that we've done here is not evidence.

4  That's -- I mean, all the arguments that we've made, all the

5  statements we've made, for the Board's purposes, is not evidence;

6  is that --

7          ADMINISTRATIVE LAW JUDGE MONTANO:  Everything that is in

8  the file -- if you appeal, and I anticipate that you will appeal,

9  is that the entire file that I have will be going to the --

10          MR. LAMONACA:  Correct.

11          ADMINISTRATIVE LAW JUDGE MONTANO:  -- to the Board.  So

12  all of that --

13          MR. LAMONACA:  But nothing --

14          ADMINISTRATIVE LAW JUDGE MONTANO:  -- will go up to the

15  Board:  the motion for summary judgment, all of the motions in

16  that file, this transcript will go up, the arguments that have

17  been made by you on behalf of Mr. Repetto will be going up.  And

18  that is the evidence of the case.

19          MR. LAMONACA:  But the statements that I've made or

20  opposing counsel has made as part of argument, it's not considered

21  evidence; is that correct?

22          ADMINISTRATIVE LAW JUDGE MONTANO:  Well, I have found

23  that you have conceded for the Administrator -- for Petitioner

24  that the documents were not provided.  And that -- you represent

25  the Petitioner.  That is an issue before me.  The purpose of this

1   hearing, of this proceeding, was to determine whether or not the

2   records were provided and whether or not the request was

3   reasonable.

4           Oral arguments, those were two legal issues before me

5   and two legal issues alone.  They did not require any witnesses to

6   tell me whether the request was reasonable because I found, based

7   on the information before me, that the -- request was reasonable,

8   that there were no other records in the Princeton House Behavioral

9   Health -- from Princeton House Behavioral Health in the file.  And

10  therefore, I found that I could proceed on the motion for summary

11  judgment.

12          As to whether or not it's evidence or not, Mr. Lamonaca,

13  as an attorney, and as a judge, from my standpoint, certainly

14  you've heard my ruling, you can make whatever arguments --

15          MR. LAMONACA:  I understand.

16          ADMINISTRATIVE LAW JUDGE MONTANO:  -- that you want to

17  make to the Board.

18          MR. LAMONACA:  I understand.

19          ADMINISTRATIVE LAW JUDGE MONTANO:  All right.

20          MR. LAMONACA:  Thank you, Your Honor.

21          ADMINISTRATIVE LAW JUDGE MONTANO:  Okay.

22          MS. CARON:  No, Your Honor.

23          ADMINISTRATIVE LAW JUDGE MONTANO:  All right.  Thank

24  you.

25          Certainly, as Mr. Lamonaca is trying to clarify for the

1  record, whatever arguments you want to make are going to be based

2  on this record.  Again, they -- the Board may find I made an error

3  of law or they may find I didn't.  They may find I was arbitrary,

4  capricious or they might find that  -- that I was not.

5          So in any event, this is the road before you,

6  Mr. Repetto.  I wish it was a different road for you.  The

7  decisions I have to make unfortunately are bound by what I feel is

8  appropriate and is supported by the arguments and the record

9  before me; therefore, I had to rule in the way that I did.

10          Since there is nothing else, if I will ask the court

11  reporter to hand a copy to both parties.  And with that, I will go

12  off the record, and that will end the proceedings.  Thank you all

13  very much.

14          (Whereupon, at 10:16 a.m., the proceedings were

15  concluded.)

16

17

18                              _____

19  EDITED ON                   ALFONSO J. MONTAÑO

20  FEBRUARY 7, 2013            Chief Administrative Law Judge

21

22

23

24

25

CERTIFICATE

This is to certify that the attached proceeding before the

NATIONAL TRANSPORTATION SAFETY BOARD

IN THE MATTER OF:        PETITION OF ROBERT JOHN REPETTO

DOCKET NO.:              SM-5275

PLACE:                   Washington, D.C.

DATE:                    January 10, 2013

was held according to the record, and that this is the original,

complete, true and accurate transcript which has been compared to

the recording accomplished at the hearing.


_____
Timothy J. Atkinson, Jr.
Official Reporter


_____
Danielle S. VanRiper
Transcriber